VAN HORN *vs.* McNEILL, administrator.*

| 79 | 121 |
| 87 | 109 |
| 79 | 121 |
| 91 | 750 |
| 79 | 121 |
| 96 | 223 |

The act of 1878 (code, §2025,) touching the sale of homesteads, applies to all homesteads, as well those set apart before as after its passage, and in holding off creditors until the homestead term expires, it carries out the true intent of the constitution. That the debt was created prior to the passage of the act, gives the creditor no vested right to subject a so-called reversion in the homestead property, either before or after a sale made in pursuance of the act.

April 25, 1887.

Homestead. Debtor and Creditor. Reversions. Before Judge WILLIS. Chattahoochee Superior Court. September Term, 1886.

Reported in the decision.

JOSEPH F. POU, for plaintiff in error.

McNEILL & LEVY, for defendant.

BLECKLEY, Chief Justice.

Upon a debt contracted in 1870, judgment was rendered in favor of the creditor in 1876. Afterwards in the same year, a homestead of realty was set apart to the debtor. In 1885, the judge of the superior court, exercising the jurisdiction conferred by statute, authorized the sale of the homestead, and it was sold in that year under the judge's order, the whole estate in fee being conveyed to Van Horn. In 1886, what is termed the reversionary interest in that property was levied on by virtue of this creditor's execution, and Van Horn interposed a claim. It was returned to the superior court for trial, and the facts were all agreed upon in a written statement presented to the judge, and he held that the reversion was subject to

*BLANDFORD, J., did not preside in this case, on account of providential cause.

levy and sale; and this writ of error was brought to reverse that judgment.

The case is controlled by *Stephenson vs. Eberhart*, decided a few days ago; and I shall make very few observations. There was a point argued and insisted upon, by which it was sought to distinguish this from the case to which I refer. That point was that this debt, being contracted prior to the act of 1878 (code, §2025), which determines the interest that the purchaser takes under such a sale, was not affected by the act; that the right to subject the reversionary interest was a vested right, arising at the time the debt was created, and that the reversion was then subject to sale under circumstances such as exist here; and this being so, that the act of 1878 could not defeat the creditor's right to subject it. The argument proceeds upon a total misapprehension of the nature of the homestead right and of homestead exemption. The constitution of 1868, under which this homestead was set apart, declared that the head of a family might have a homestead of realty to the value of $2,000, to be valued at the time of setting apart. That valuation embraced all the interest in the land. It did not estimate the value of a homestead estate, leaving out a reversionary interest, but it included the value of the whole property. Two thousand dollars worth of realty was exempted, and no execution could be enforced against anything embraced in that valuation. The reversion, so-called, was included in the exemption just the same as the homestead estate so-called. The truth is, under the scheme of the constitution, there is no carving of any homestead estate or any other estate out of the property valued. It is the property, the physical property, that is exempt from levy and sale, and all interest is exempt so long as it remains homestead property, that is, so long as the homestead term continues. Taking the constitution alone, it would seem that the property would never become subject to levy and sale; but as the constitution has been construed, and as the statutes

have grown up around it, there is a limitation to the time during which the homestead interest continues. The constitution never contemplated that there should be any sale, if at all, until the whole could be sold; and that is right, because there ought not to be carved out of the fee an estate to sell, by which some one else could get an interest in the property so as to harass the family with questions about waste, and with all sorts of controversies on outstanding rights. It was intended that the debtor should hold the property after it was set apart as he did before, save only that the use and benefit should be changed and be secured to his family; otherwise, his ownership of the property was to be and remain afterwards just as before; and his creditors were intended to be held off from the whole $2,000 worth, until after there ceased to be any homestead right in it, and then (if at all) the whole to be sold together; and this is better for the interest of the creditor as well as of the debtor, because in selling a reversionary or so-called reversionary interest, none could know what it would be worth; no one would be able to estimate correctly its value. The contingencies of birth, death and marriage would or might all be involved; so that this so-called reversionary interest is too uncertain to be worth anything definite, and therefore it is better for all parties that there should be no arbitrary cutting up of the estate and separating it into a homestead estate and a reversionary estate. If the act of 1878 were out of the way, the right construction of the constitutional exemption is, and always has been, that there is nothing that is subject to levy and sale until the homestead interest has become extinct. *Haslam vs. Campbell*, 60 *Ga.* 650; *Jolly vs. Lofton*, 61 *Ga.* 154. This creditor, though he made his contract before the act of 1878, did not have any vested right to sell anything in this property. And the act of 1878 declares expressly that in case of sale, the whole shall be sold, as well the interest of the family as the interest of the head of the family; and the purchaser shall

take it all and hold it exempt from liens, just as the head of the family held it, and for the same length of time. And the act is right.   It is a matter of perfect indifference to creditors whether homestead property is sold or not; they can come at the same time as if it were not sold; their liens will take effect upon it, and they can realize out of it alike in either contingency.   It is none of their con-cern whether it is sold or not, unless they consent to trans-fer their liens to the newly acquired property ; and in this case that was not done.

There has been no invasion of any right, vested or in-choate, of this creditor, by the sale of this homestead, and he cannot proceed against the property until the home-stead term is ended.   The act of 1878 (code, §2025) touch-ing the sale of homesteads, applies to all homesteads, as well those set apart before as after its passage, and in holding off creditors before the homestead term expires, it carries out the true intent of the constitution.   That the debt was created prior to the passage of the act, gives the creditor no vested right to subject a so-called reversion in the homestead property, either before or after a sale made in pursuance of the act.

A part of what I have said *arguendo* may appear, and no doubt is, in conflict with much that has been said in the same way heretofore, and even with a decision of this court in 69 *Ga.* 476, but that decision was made on a state of facts which arose prior to the act of 1878, and while there was no legislative settlement of the question.   It may be that when cases arise identical with that which is ruled in 69th *Ga.*, it will be the duty of this court, on the doctrine of *stare decisis*, to apply that decision and go contrary to sound principle, but the present case does not oblige us to do it, and we do not purpose to extend the former to any state of facts which it does not directly and imperatively rule.   The best way to deal with an error is to correct it, and the next best is to confine it.

Judgment reversed.